[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11105

_____

D.C. Docket No. 8:11-cr-00181-EAK-MAP-1

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

KENNETH H. BURKE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 4, 2013)

Before MARTIN, HILL and BARKSDALE,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by
designation.

Kenneth H. Burke, Jr. appeals his convictions for conspiracy and attempt to unlawfully affect commerce by robbery, in violation of 18 U.S.C. § 1951; discharging a firearm "during and in relation to a crime of violence," in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2; and possessing, in and affecting interstate commerce, ammunition as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 2. Burke argues that there was insufficient evidence to support his convictions; that evidence obtained during a search of his grandmother's[1] apartment should have been suppressed; and that the court erred by allowing the government to introduce improper 404(b) evidence.[2]

Burke's convictions are based on an attempted robbery and shooting at a convenience store in Mulberry, Florida on January 29, 2011. Two men, wearing hooded sweatshirts, gloves, and masks, ran inside the convenience store at around 7:51 p.m. Both men had guns. One man pushed a customer to the ground and tied him up using a zip-tie. The other man pushed the store manager to the ground, kicked him while saying "money, money," and shot him. Shortly after the shooting, the two men ran out the door.

---

[1] Miss Henrietta Scudder-Ward, the owner of the apartment searched, was not actually Burke's grandmother. But, because she was referred to in this way throughout the proceedings below and in the briefs to this Court, we will do the same.

[2] Burke also argues that the court erred by improperly imposing a 6-level enhancement to his offense level at sentencing. Because Burke "has failed to develop the argument or to offer any citation to the record in support of it, we deem the argument waived." See Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1283 (11th Cir. 2009).

I.

Burke's first argument goes to the sufficiency of the evidence. Specifically, for his two 18 U.S.C. § 1951 robbery convictions for conspiracy and attempt, he argues that there was not sufficient evidence to support a finding that (1) the January 29th crime was an attempted robbery as opposed to a crime of violence; and (2) Burke participated in the January 29th crime. Burke also challenges his § 924(c)(1)(A) firearm conviction and § 922(g)(1) ammunition conviction on the ground that there was insufficient evidence to link him to the discharged firearm and ammunition.[3]

"We review the sufficiency of the evidence in the light favorable to the government, drawing reasonable inferences in favor of the government, seeking to determine if a reasonable trier of fact could find the defendant guilty beyond reasonable doubt." United States v. Clavis, 956 F.2d 1079, 1085 (11th Cir. 1992).

After a careful review of the record, and having the benefit of oral argument, we conclude that there was sufficient evidence to support Burke's convictions. For example, one witness testified that Burke wanted to borrow a car so that he could "go do something as far a like for a lick," and clarified that "lick" was lingo for "a robbery." The convenience store manager testified that one of the masked men

---

[3] In his brief, Burke argued that there was not sufficient evidence that the ammunition found at the crime scene was manufactured outside of Florida, as required for his § 922(g)(1) conviction. However, at oral argument, Burke's counsel conceded we should review this issue for plain error and that his argument would not succeed under that standard. Therefore, this argument is waived.

who came into his store said "money, money" as he attacked the manager. Burke was connected to the January 29th crime through cell phone tower records that showed that he traveled from his home in Tampa to Mulberry and back during the time period of the robbery. There was evidence linking Burke to zip-ties like those used to tie up the customer in the store, and a glove was discovered in Burke's bedroom with gunshot residue on the outside and Burke's DNA on the inside. There was testimony that Burke had used guns in the past. Finally, the jury saw surveillance video from the convenience store and was able to compare the images of the two men in the video to Burke, who was sitting in the courtroom. Our review leads us to conclude there was ample evidence to support a finding that Burke participated in an attempted robbery and to link Burke to the discharged firearm and ammunition.

## II.

Burke also argues that the district court erred by denying his motion to suppress evidence that was obtained from a search of his grandmother's apartment. The district court determined that Burke did not have standing to challenge the search and, even if he did, the grandmother had voluntarily consented to the search.

A motion to suppress involves mixed questions of law and fact. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). We review the "factual

findings for clear error and the court's application of law to those facts de novo."

United States v. Capers, 708 F.3d 1286, 1295 (11th Cir. 2013) (quotation marks

omitted).  "The facts are construed in the light most favorable to the prevailing

party."  Id. at 1295–96 (quotation marks omitted).

To establish standing, Burke "bears the burden of demonstrating a legitimate

expectation of privacy in the areas searched."  United States v. Baron-Mantilla,

743 F.2d 868, 870 (11th Cir. 1984).  A defendant may have a legitimate

expectation of privacy in a premises he did not own or rent if he demonstrates "an

unrestricted right of occupancy or custody and control of the premises

distinguished from occasional presence on the premises as a mere guest or invitee."

Id. (quotation marks omitted).

Burke has not met his burden.  He failed to demonstrate "an unrestricted

right of . . . custody and control" of the apartment.  See id.  While Burke had a key

to the apartment and sometimes spent the night with Mia English, who lived there,

this, without more, does not distinguish him from a mere guest or invitee.  See id.

Burke's grandmother stated that only she and Ms. English lived in the apartment;

the agents did not find anything in the apartment to suggest that Burke lived there

"regularly around the time of the search"; and Burke provided a different address

as his place of residence to the officers.  See United States v. Brazel, 102 F.3d

1120, 1148 (11th Cir. 1997).  Neither was there any indication that Burke "took

5

normal precautions to maintain his privacy" in the apartment.  See Rakas v. Illinois, 439 U.S. 128, 152, 99 S. Ct. 421, 435 (1978).  Based on all of this, we agree with the district court's determination that Burke does not have standing to challenge the search.

### III.

Burke's last argument is that the district court admitted improper character evidence in violation of Fed. R. Evid. 404(b).  The district court allowed Elena Harris, Burke's former girlfriend, to testify that Burke "stays strapped, meaning he's protected no matter where he goes."  Burke highlights Harris's testimony about two occasions on which she had seen Burke discharge a firearm, once when he was demonstrating something to a friend in a yard and once when he accidentally discharged the gun during a fight.

"The district court's decision to admit or exclude [404(b)] evidence is reviewed for abuse of discretion."  United States v. Matthews, 431 F.3d 1296, 1310–11 (11th Cir. 2005).  The admissibility of 404(b) evidence involves a two-part test.  "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character.  Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403."  United States v.

6

Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc).[4]   Under the first step,

evidence is relevant "when it has any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence."  Id. (quotation marks omitted).

Analysis under the second step "lies within the sound discretion of the district

judge and calls for a common sense assessment of all circumstances surrounding

the extrinsic offense, including prosecutorial need, overall similarity between the

extrinsic act and charged offense, as well as temporal remoteness."  United States

v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997) (quotation marks omitted).

       We conclude that the district court did not abuse its discretion by admitting

this 404(b) evidence.  First, under our precedent, the testimony was permissible to

show that Burke had knowingly and intentionally possessed a firearm in the past

and knew how to discharge a firearm.  This was relevant to his firearm and

ammunition charges.  See United States v. Jernigan, 341 F.3d 1273, 1281 (11th

Cir. 2003) (explaining that there is a "logical connection between a convicted

felon's knowing possession of a firearm at one time and his knowledge that a

firearm is present at a subsequent time" and collecting cases).  Second, in light of

the probative value of this evidence and the fact that the government did not have

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding all decisions of the former Fifth Circuit handed down before October 1, 1981.

much other evidence to show Burke's knowledge of firearms and access to firearms, we cannot say that the district court abused its discretion by determining the probative value of the evidence was not outweighed by its undue prejudice. Harris's testimony was certainly prejudicial to the extent that she testified about an occasion that Burke discharged a gun in front of her son. However, the prejudicial nature of this evidence was mitigated by Harris's testimony that on that occasion Burke discharged the gun accidently and the gun was not aimed at her. In light of the record as a whole, we cannot say that the district court abused its discretion in allowing this testimony.

IV.

For the foregoing reasons, we **AFFIRM.**